[No. 23169.   Department Two.   July 23, 1931.]

L. W. JACKSON, *Appellant*, v. GRANT SMITH & COMPANY *et al.*, *Respondents.*[1]

[1]Reported in 1 P. (2d) 856.

*W. B. Mitchell* and *Thomas W. Payne,* for appellant.

*Preston, Thorgrimson & Turner* and *Wakefield & Witherspoon,* for respondents.

BEALS, J.—Appellant moves to strike the supplemental transcript filed by respondents, and also respondents' supplemental abstract. Appellant deems the supplemental transcript objectionable because it contains motions and demurrers, as well as an amended answer which was not filed until after the rendition of the judgment. It appears that this amended answer was served upon appellant long prior to the trial, and that appellant replied to the affirmative defense therein contained, which reply was filed prior to the trial. Under these circumstances, respondents were entitled to bring the amended answer to this court by way of a supplemental transcript. An examination of respondents' supplemental abstract convinces us that respondents were within their rights in preparing and filing the same. Appellant's motions to strike are denied.

In his original complaint, plaintiff named as defendants Grant Smith & Company, a partnership, W. E. Houser, E. V. Houser, Smith Securities Company, a corporation, and Panhandle Electric Railway & Power Company, a corporation; plaintiff alleging that the defendants W. E. and E. V. Houser, together with one Grant Smith, deceased, formed the copartnership known as Grant Smith & Company. Plaintiff alleged his ownership of stock in the defendant Panhandle Electric Railway & Power Company (hereinafter referred to as Panhandle Co.); that Grant Smith & Company acquired a large amount of the capital stock of the Panhandle Co. and controlled the same, wrongfully claiming that the partnership had made advances to the corporation in a sum slightly under five thousand

dollars; that the board of trustees of the Panhandle Co., acting under the dictation of the members of the defendant partnership, sold the assets of the Panhandle Co. for five thousand dollars, and paid this money to the partnership in liquidation of an alleged indebtedness for cash advanced; that the assets of the Panhandle Co. were worth fifty thousand dollars, and that the stockholders of the Panhandle Co. were thereby wrongfully deprived of fifty-five thousand dollars, for which amount plaintiff, on his own behalf and on behalf of other stockholders of the Panhandle Co., demanded judgment against the defendants.

This complaint was filed January 10, 1927, and was served upon the defendant W. E. Houser. September 29, 1928, an amended complaint was served upon counsel for defendant W. E. Houser (which amended complaint was filed October 1, 1928), in which plaintiff named as additional defendants H. H. Hunt, as trustee of Smith Securities, and H. H. Hunt and John V. McDonald, as trustees of the Panhandle Co.; plaintiff praying for judgment, for alleged breach of contract, against all defendants, save the Panhandle Co., for the sum of $5,600,000. Trial of the action resulted in a nonsuit, and from such judgment of dismissal plaintiff appeals.

This action is apparently one by a stockholder in the Panhandle Co., a dissolved corporation, on his own behalf and on behalf of other stockholders, to recover damages on account of an alleged breach, by respondents, of contracts made with the Panhandle Co. in 1909 and 1910, by the respondent partnership, of which respondent W. E. Houser seems to be the sole surviving representative. The Panhandle Co. was organized under the laws of Washington in 1907, and, shortly after its organization, it obtained authority

under the laws of Idaho to engage in business in that state. Its primary objects were to construct a railroad from the town of Priest river, Idaho, to Priest lake, lying about thirty miles north of the town, and to engage in the generation of hydro-electric energy, using the water power available in Priest river. The corporation acquired some land for its proposed railroad purposes, but it appears that the plan of constructing a railroad was abandoned and the land sold.

The plans for power development contemplated elaborate and extensive installations, which it was anticipated would produce a large amount of electric current. The development of these plants naturally required the acquisition of considerable property and easements for flowage, etc. During the four years following June 30, 1908, the respondent partnership acquired over five thousand shares of the capital stock of the Panhandle Co., and during the years 1909 and 1910, the partnership and the corporation engaged in negotiations looking toward the carrying out, by the partnership, of the corporation's proposed system of power development. It seems clear that the parties hoped to find a market for the electric energy which it was anticipated would be developed along the Priest river, but an examination of the record convinces us that all parties concerned became satisfied that no profitable exploitation of these resources was possible. From 1914 to 1924, no meetings were held, either by the trustees or stockholders of the Panhandle Co.

August 8, 1924, Smith Securities Company, which had succeeded to certain rights pertaining to the partnership, called a meeting of the stockholders of the Panhandle Co. by written notice, a copy of which is in the record. Pursuant to this notice, the stockholders met, and the result of the meeting may be summarized

by stating that thereafter the board of trustees directed the sale of the assets of the corporation, and that the same were sold for five thousand dollars, which money was applied in payment of advances theretofore made by the corporation, together with the expenses of disincorporating the Panhandle Co., which was dissolved March 10, 1925.

The errors assigned by appellant all go to the matter of the granting of respondents' motion for a nonsuit, and may be discussed together.

Appellant contends that respondents wrongfully appropriated the property of the Panhandle Co., and breached their contracts with that company to the damage of its stockholders. Appellant now contends that, in its essence, this is an action for an accounting, but it is clear that the action was tried below upon the theory that it was founded on breach of contract. Appellant's counsel, in answer to a question propounded by the trial court, early in the trial stated that the action was for breach of the general contract. In its decision, the trial court stated:

"Counsel complains that a complete accounting has not been made of the receipt, disposition and application of the proceeds of the sale of the assets of the Panhandle Co. to Schaefer. No demand has been made for it in this hearing. This hearing is not for an accounting. . . . Now the complaint charges fraud, if it charges anything. The argument proceeds upon the theory that this was a fraudulent breach of a contract."

The record is very long and extremely complicated, and it is not always easy to understand appellant's contentions. Passing respondents' argument that the action may not be maintained for the reason that only two, or less than a majority, of the trustees of the dissolved Panhandle Co. are parties thereto,

we conclude that any rights which may ever have existed in favor of the Panhandle Co., or its stockholders, were barred by lapse of time prior to the assertion of any claim at law by appellant. December 31, 1909, the partnership of Grant Smith & Company submitted to the Panhandle Co. a proposition to develop its water power, construct a dam, etc., for the lump sum of $840,000. February 7, 1910, a contract was entered into between these parties, which provided for the installation by the partnership of plants, dams, machinery, etc.; under other provisions of which contract, the Panhandle Co. was to secure necessary land and permits. It is clear that, if this contract was not abandoned by mutual consent, or because of the failure of the Panhandle Co. to perform its obligations thereunder, the statute of limitations had run against the assertion of any claim on the contract against any of these respondents prior to the commencement of this suit. Any breach of this contract by respondents which could afford any basis for a suit by the Panhandle Co., or its representatives, occurred certainly over ten years prior to the institution of this action.

In the next place, appellant contends that the partnership was obligated to protect certain permits owned by the Panhandle Co., covering water rights, and that by the neglect of the partnership these rights were lost. We are unable to find in the record evidence on this phase of the case sufficient to support any judgment in appellant's favor.

As to the sale of the assets of the Panhandle Co. by order of its trustees, the record does not support the claim that the sale was made for an inadequate price, or that the proceeds were unlawfully diverted or appropriated.

We are unable to find that the record contains any evidence upon which could be based a judgment in ap-

pellant's favor. The trial court properly sustained respondents' motion for a nonsuit, and the judgment appealed from is affirmed.

TOLMAN, C. J., MITCHELL, MILLARD, and BEELER, JJ., concur.

